**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DOMENICO F.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. EA-25-1914** |
| **FRANK J. BISIGNANO,** | * | |
| **Commissioner of Social Security,** | | |
| | * | |
| **Defendant.** | | |
| | * | |

**MEMORANDUM OPINION**

On June 13, 2025, Plaintiff Domenico F. petitioned this Court to review the final decision

of the Social Security Administration (SSA or Commissioner) denying his claim for benefits.

ECF No. 1.  This case was referred to a United States Magistrate Judge with the parties'

consent.[1]  ECF Nos. 3, 5; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).  Pending

before the Court is Plaintiff's appeal, which is fully briefed.[2]  ECF Nos. 11, 14.  No hearing is

necessary.  Local Rule 105.6.  This Court must uphold the decision of the SSA if it is supported

by substantial evidence and if the SSA employed proper legal standards.  42 U.S.C. §§ 405(g),

1383(c)(3); *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, and for the

reasons set forth below, the Commissioner's decision is affirmed.

## I.    BACKGROUND

### A.    Procedural History

On December 7, 2020, Plaintiff filed applications for Disability Insurance Benefits and

Supplemental Security Income under Titles II and XVI of the Social Security Act (the Act),

---

[1]  This case was reassigned to the undersigned on April 9, 2026.

[2]  Plaintiff elected not to file a reply and the time to do so has lapsed.  Local Rule
105.2(a) (D. Md. Dec. 1, 2025).

42 U.S.C. § 401 *et seq.* and 42 U.S.C. § 1381 *et seq.*  ECF Nos. 11-1 at 1; 8-3 at 20; 8-6 at 2–4, 9–12.[3]  Plaintiff alleged a disability onset date of November 23, 2020.  ECF No. 8-3 at 20. Plaintiff claims that he is disabled within the meaning of the Act because he is unable to work due to "right ulnar neuropathy, status-post extensive nerve transfer revision surgery, release of Guyon's canal, and release of carpal tunnel; status-post right rotator cuff repair; degenerative joint disease of right knee; status-post hip replacement; degenerative disc disease of the lumbar spine; anxiety; depression; bipolar disorder; and [post-traumatic stress disorder (PTSD)]."  ECF No. 11-1 at 2.  The SSA initially denied Plaintiff's applications for benefits on November 17, 2021.  ECF Nos. 8-3 at 20; 8-5 at 3, 7.  Plaintiff sought reconsideration, and the SSA affirmed its initial denial on March 13, 2023.  ECF No. 8-5 at 16, 32, 37.  Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on October 12, 2023.  ECF Nos. 8-3 at 66–102; 8-5 at 51.  The ALJ held a supplemental hearing on July 25, 2024.  ECF No. 8-3 at 20, 43–65.  The ALJ rendered a decision on September 13, 2024, in which she found that Plaintiff was not disabled within the meaning of the Act.  *Id*. at 17–34.  Plaintiff requested a review of the ALJ's decision, which the Appeals Council denied on May 20, 2025.  *Id*. at 2.  The ALJ's September 13, 2024 decision therefore constitutes the final, reviewable decision of the SSA. *Sims* v. *Apfel*, 530 U.S. 103, 106-107 (2000); 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a).

**B.    Statutory Framework**

The Social Security Act authorizes disability insurance benefit payments to every insured individual who "is under a disability."  *Cleveland* v. *Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999) (quoting 42 U.S.C. § 423(a)(1)); *see also Shue* v. *O'Malley*, No. 23-1795, 2024 WL 2827936, at *3 (4th Cir. June 4, 2024).  The Act also authorizes Supplemental Security Income

---

[3]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

payments to "persons who have a 'disability.'"[4] *Barnhart* v. *Thomas*, 540 U.S. 20, 21 (2003). Both of these programs define "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

Federal regulations require an ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "The applicant bears the burden of production and proof during the first four steps." *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citation omitted).

If the claimant satisfies step three, there is "an automatic finding of disability," which "relieves the decision maker from proceeding to steps 4 and 5." *Patterson* v. *Commissioner of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). If the claimant does not carry their burden

---

[4] The primary difference between these two disability benefit programs is the applicant's employment history and financial resources. *Delk* v. *Colvin*, 675 Fed. Appx. 281, 282 (4th Cir. 2017) (explaining that the Disability Insurance Program provides benefits to individuals "who have contributed to the program while employed," whereas Supplemental Security Income provides benefits based on financial need); *see also* 42 U.S.C. §§ 423(a)(1), 1381a, 1382.

at the third step of the sequential evaluation, then the ALJ must assess relevant evidence and make a finding regarding the claimant's residual functional capacity.  20 C.F.R. §§ 404.1520(e), 416.920(e); *Monroe* v. *Colvin*, 826 F.3d 176, 179 (4th Cir. 2016).  Residual functional capacity is defined as "the most [the claimant] can still do despite [their physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1).  The residual functional capacity assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Mascio*, 780 F.3d at 636 (quoting Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims (SSR 96-8p), 61 Fed. Reg. 34,474-01, 34,475 (July 2, 1996)).  "Only after such a function-by-function analysis may an ALJ express [residual functional capacity] 'in terms of the exertional levels of work.'" *Monroe*, 826 F.3d at 187 (quoting *Mascio*, 780 F.3d at 636).  The ALJ then uses its residual functional capacity determination at the fourth and fifth steps of the disability assessment. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Monroe*, 826 F.3d at 180.

> ### C.     The ALJ's Decision

The ALJ initially determined that Plaintiff meets the SSA's "insured status requirements . . . through December 31, 2025."  ECF No. 8-3 at 22 (bold removed).  At step one of the five-step sequential disability evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date.  *Id*.  At step two, the ALJ found that Plaintiff suffered from the severe impairments of "right ulnar neuropathy, status-post extensive nerve transfer revision surgery, release of Guyon's canal, and release of carpal tunnel; status-post right rotator cuff repair; and degenerative joint disease of right knee" (*id*. (bold removed)), and the non-severe impairments of low back pain, right hip pain, depressive disorder, anxiety disorder, bipolar disorder, and PTSD (*id*. at 23).  In reaching this conclusion, the ALJ evaluated the "paragraph B criteria" and found that Plaintiff had a mild limitation only in the areas of

interacting with others and adapting or managing oneself.[5]  *Id*. at 23–24.  The ALJ found that

Plaintiff had no limitations in the other functional areas, outlined the evidence that supported her

findings, and concluded that the paragraph B criteria were not satisfied.  *Id.*  At step three, the

ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets

or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,

Appendix 1."  *Id*. at 24 (bold removed and citations omitted).

Before continuing to the fourth step of the sequential evaluation, the ALJ determined that

Plaintiff retained the residual functional capacity to:

> perform light work . . .  except he cannot climb ladders, ropes, or
> scaffolds.  He can occasionally crawl.  He can occasionally handle,
> finger, and feel with the right upper extremity.  He can occasionally
> reach overhead with the right upper extremity. He can have
> occasional exposure to hazards, extreme temperatures, wetness, and
> humidity.

*Id*. at 25 (bold removed).  At step four, the ALJ found that Plaintiff is unable to perform past

relevant work as an industrial truck operator, material handler, woodworking machine operator,

or warehouse worker.  *Id*. at 31–32.  Lastly, at step five, the ALJ found that considering

Plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that

exist in significant numbers in the national economy that [he] can perform."  *Id*. at 32 (bold

removed).  Accordingly, the ALJ determined that Plaintiff had not been under a disability, as

defined in the Act, and that the SSA properly denied his applications for benefits.  *Id*. at 33–34.

---

[5]  Appendix 1 to 20 C.F.R. Part 404, Subpart P provides a listing of impairments.  Within
Appendix 1, "Adult Listings 12.00 *et seq*. . . . pertain to mental impairments, and consist of
(1) 'paragraph A criteria,' which consist of a set of medical findings; (2) 'paragraph B criteria,'
which consist of a set of impairment-related functional limitations; and (3) 'paragraph C criteria,'
which relate to 'serious and persistent' disorders lasting at least two years with a history of
ongoing medical treatment and marginal adjustment."  *Autumn T.* v. *Saul*, Civil Action No.
DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020).

## II.    DISCUSSION

On appeal, Plaintiff argues that the ALJ (1) erroneously determined that certain impairments were non-severe and (2) improperly relied on her own opinion instead of the medical evidence.  ECF No. 11-1 at 16–22.  Following discussion of the applicable standard of review, each argument is addressed in turn below.

### A.    Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed."[6] *Britt* v. *Saul*, 860 Fed. Appx. 256, 259 (4th Cir. 2021) (citing 42 U.S.C. § 405(g)).  The Court must affirm the decision "so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence."  *Id.*; *accord Mascio*, 780 F.3d at 634; *Coffman* v. *Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  Factual findings supported by substantial evidence "shall be conclusive."  42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence.").

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek* v. *Berryhill*, 587 U.S. 97, 102 (2019).  Under this standard of review, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)); *see also Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.").  It is "more than

---

[6]  After a hearing to determine an individual's eligibility for Supplemental Security Income benefits, the Commissioner's final determination is subject to the same judicial review as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

a mere scintilla . . . [and] somewhat less than a preponderance." *Laws*, 368 F.2d at 642. The "threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997). Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, an "elaborate or even sophisticated" explanation is not required. *Mascio*, 780 F.3d at 636-637; *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015). Rather, an administrative decision's reasoning need only be "reasonably discernible." *Garland* v. *Ming Dai*, 593 U.S. 357, 369 (2021). "Meaningful review is frustrated—and remand necessary—only where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record." *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

**B.    Severity Determination**

Plaintiff argues that the ALJ erroneously found that his degenerative disc disease of the lumbar spine, anxiety, depression, bipolar disorder, and PTSD were non-severe impairments at step two of the five-step sequential evaluation process. ECF No. 11-1 at 16. At step two, an ALJ must determine whether a claimant has "medically determinable impairments" and, if so, whether they are "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If a claimant has no severe impairments, the claimant is not disabled, and the sequential analysis stops there. *Tamika B.* v. *Saul*, Civil Action No. GLS-19-3345, 2021 WL 949469, at *2 (D. Md. Mar. 12, 2021). If a claimant has at least one severe impairment, an ALJ must consider the effects of both severe and non-severe impairments at the subsequent steps of the process, including the residual functional capacity determination. *Louise H. v. Commissioner., Soc. Sec. Admin.*, Civil Action No. ADC-18-3922, 2019 WL 5309997, at * 5 (D. Md. Oct. 21, 2019); SSR 96-8p, 61 Fed. Reg.

at 34,477.  "Consequently, any error by an ALJ at step two is harmless if the ALJ considers the effects of all of the claimant's impairments in the subsequent steps."  *John S.* v. *Kijakazi*, No. 3:20-CV-00940 (JAG), 2022 WL 3643374, at *7 (E.D. Va. Aug. 8, 2022), *report and recommendation adopted*,  2022 WL 3635349 (E.D. Va. Aug. 23, 2022).

An ALJ must follow the special-technique regulation, 20 C.F.R. §§ 404.1520a, 416.920a, "[w]hen evaluating and documenting the severity of a claimant's mental impairment at steps 2 and 3—and its concomitant impact on the [residual functional capacity] assessment relevant to step 4."  *Patterson*, 846 F.3d at 659.  This regulation requires the ALJ "to rate [the claimant's] degree of limitation in the four broad functional areas known as the paragraph B criteria." *Autumn T.* v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020) (citing 20 C.F.R. §§ 416.920a(c), 416.925); *see also* footnote 5, *supra*.  The four paragraph B functional areas are: (1) "understanding, remembering, or applying information"; (2) "interacting with others"; (3) "concentrating, persisting, or maintaining pace"; and (4) "adapting, or managing oneself."  *Anthony M.* v. *Commissioner*, Civil Action No. SAG-19-651, 2020 WL 434581, at *2 (D. Md. Jan. 28, 2020) (citing 20 C.F.R. § 404.1520a).

Here, the ALJ engaged in the required analysis to determine the severity of Plaintiff's physical and mental impairments.  As to Plaintiff's degenerative disc disease, the ALJ found at step two that "it does not appear" that Plaintiff's low back pain "significantly limits [his] ability to perform basic work activities."  ECF No. 8-3 at 23.  The ALJ based this conclusion on x-rays of the lumbar spine—showing only minimal degenerative changes—and treatment notes from physical therapy sessions between November 2022 and January 2023.  ECF Nos. 8-3 at 23; 8-8 at 103, 346–389, 413.  The ALJ noted that by the end of January 2023, Plaintiff reported that he had "reduced" symptoms in his lower back, little to no discomfort, minimal pain, and that he was "feeling great" and "feeling 30 again."  ECF Nos. 8-3 at 23; 8-8 at 346, 352, 356.  This analysis

adequately explains and supports the ALJ's conclusion that Plaintiff's degenerative disc disease and lower back pain had "no more than a minimal effect" on his physical ability to do basic work activities and is therefore supported by substantial evidence.  *David P.* v. *Kijakazi*, Civil Action No. BAH-22-2745, 2023 WL 5984169, at *3 (D. Md. Sept. 14, 2023) (affirming the ALJ's finding that impairments were non-severe where they were controlled by medicine, did not require specialized treatment, had decreased in frequency, and related evaluations were "unremarkable").

The ALJ's determination that Plaintiff's mental limitations are non-severe is likewise supported by substantial evidence.  The ALJ discussed the evidence relevant to each of the four paragraph B functional areas and concluded that Plaintiff had no limitations other than mild limitations in (1) his ability to interact with others due to "mood swings" and "self-isolat[ion]" and (2) adapting and managing himself due to depression and anxiety attacks.  ECF No. 8-3 at 23–24.  To support her finding that Plaintiff has only a mild limitations in these two functional areas, the ALJ noted, among other things, that Plaintiff scored within the average range (27/30) on the mini mental status exam; reported that he "likes to read a lot, including topics such as business, sports, and worldly events"; engages in social activities and forums on the internet; and tried to do his own shopping, which generally requires interaction with others.  *Id.*  The ALJ also noted that the relevant medical evidence documented that Plaintiff was cooperative, maintained normal eye contact, and "had normal attention and could engage without distraction."  *Id.* at 24. Finally, the ALJ found persuasive the opinions of state agency psychology consultants who had concluded that Plaintiff had only mild limitations based on "limited mental health treatment, no cognitive issues, and ability to perform activities of daily living."  *Id.* at 29.  The ALJ concluded that "medically determinable mental impairments . . . , considered singly and in combination, do

9

not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." *Id.* at 23.

An ALJ rates a claimant's mental impairments in each of the paragraph B functional areas on a five-point scale, which ranges from "[n]o limitation (or none)" to "[e]xtreme limitation." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2). "No limitation (or none)" means that the claimant is "able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.* at § 12.00(F)(2)(a). "Extreme limitation" means the claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis," *id.* at § 12.00(F)(2)(e), which "represents a degree of limitation that is incompatible with the ability to do any gainful activity," 20 C.F.R. § 404.1520a(c)(4). A "mild" limitation, which is second on the five-point scale, means that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is *slightly limited*." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(b) (emphasis added). The claimant has the burden of demonstrating the severity of any impairments. *Pass*, 65 F.3d at 1203.

As noted, here, the ALJ found that Plaintiff had no limitations in two functional areas and mild limitations in the other two functional areas and reviewed the evidence in support of her findings in that regard. "If the claimant's degrees of limitation are no more than 'mild,' the ALJ 'will generally conclude' that the claimant's mental impairments are not severe." *Nancy R.* v. *Bisignano*, Civil Action No. CDA-24-1825, 2025 WL 2097418, at *3 (D. Md. July 24, 2025) (quoting 20 C.F.R. § 404.1520a(d)(1)); *see also* 20 C.F.R. § 416.920a(d)(1) ("If we rate the degrees of your limitation as "none" or "mild," we will generally conclude that your impairment(s) is not severe."). This is consistent with the SSA's policy guidance, which provides that "[a]n impairment or combination of impairments is found 'not severe' . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities

10

which would have no more than a minimal effect on an individual's ability to work."  Social Security Ruling 85-28, Titles II and XVI: Medical Impairments That Are Not Severe, 1985 WL 56856, at *3 (Jan. 1, 1985).  As the United States Court of Appeals for the Fourth Circuit has instructed, evidence of a "disorder" is insufficient; there must also "be a showing of related functional loss."  *Gross* v. *Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986); *see also Felton-Miller* v. *Astrue*, 459 Fed. Appx. 226, 229-230 (4th Cir. 2011).  Here, Plaintiff did not carry his burden of establishing a functional loss.  The undersigned therefore concludes that ALJ did not err at step two.[7]

C.      **Evaluation of Medical Opinion Evidence**

Following an extensive discussion of the medical evidence—something this Court has previously found to be unhelpful, *Cleo G.* v. *Commissioner of Social Security*, Civil Action No. EA-24-2834, 2026 WL 972461, at *3 (D. Md. Apr. 10, 2026)—Plaintiff asserts that "the fact [that] the ALJ disregards all of this [evidence] only shows that she is substituting her opinion for that of the substantial evidence."  ECF No. 11-1 at 20.  While an ALJ "cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so, the weighing of various evidence is precisely the typical province of the ALJ."  *Marshall* v. *Berryhill*, Civil Action No. TMD-16-62, 2017 WL 1196488, at *4 (D. Md. Mar. 31, 2017) (internal quotation marks and citations omitted).  Importantly, the reviewing court may not substitute its own judgment for that of the Commissioner or reweigh the evidence as long as the ALJ's decision is supported by substantial evidence.  *Hays*, 907 F.2d at 1456.

---

[7]  Plaintiff further contends that the Administrative Law Judge (ALJ) erred by not addressing his non-severe impairments in her residual functional capacity determination.  ECF No. 11-1 at 21.  It is unnecessary to address this argument because the undersigned finds no error in the ALJ's step-two analysis.  *Nancy R.* v. *Bisignano*, Civil Action No. CDA-24-1825, 2025 WL 2097418, at *5 (D. Md. July 24, 2025); *David P.* v. *Kijakazi*, Civil Action No. BAH-22-2745, 2023 WL 5984169, at *3 n.5 (D. Md. Sept. 14, 2023).

Here, Plaintiff argues that "it is unconscionable that the ALJ finds that [Plaintiff] can use his right [dominant] hand one-third of an eight-hour workday considering the voluminous supportive objective evidence and opinion evidence to the contrary."  ECF No. 11-1 at 19.  Plaintiff cites his history of "right ulnar nerve injury" and three surgeries on his right hand, stating he "consistently reported sharp shooting right hand pain, weakness and numbness from his small finger to his middle finger, a claw deformity, an inability to straighten out his fingers, and difficulty with activities of daily living."  *Id.* (citing ECF Nos. 8-8 at 162; 8-9 at 308, 334; 8-10 at 103, 107, 118–125).  Plaintiff contends that the medical opinion evidence that Plaintiff "has limited to no use of his right [dominant] hand is overwhelming," citing Plaintiff's surgeon, a 2016 consultative exam, notes from his third surgery, his treating orthopedist, treating primary care provider, and consultative examiner.  *Id.* at 19–20 (citing ECF Nos. 808 at 8–11, 80; 8-9 at 310, 334, 342, 348, 352; 8-10 at 104, 108).  Plaintiff does not challenge the ALJ's methodology in assessing the medical opinion evidence, nor does he argue that the ALJ failed to evaluate certain records.  Rather, Plaintiff disagrees with the ALJ's evaluation of the medical evidence.  ECF No. 11-1 at 19–20.  The Plaintiff's argument is therefore an impermissible request to reweigh the evidence.  *E.g.*, *David P.*, 2023 WL 5984169, at *4.

This Court held in *Marshall* that a "typical case of an ALJ impermissibly 'playing doctor' is when the ALJ draws medical conclusions themselves about a claimant without relying on medical evidence."  2017 WL 1196488, at *4 (internal quotation marks and citation omitted).  Here, in contrast, the ALJ evaluated at least 23 medical treatment notes and eight medical opinions authored between July 2021 and May 2024 and concluded that "the record does not support any additional manipulative limitations."  ECF No. 8-3 at 29.  The ALJ explained why she found the opinions of various medical professionals "mostly persuasive" and only "partially persuasive" with discussion of and citation to relevant evidence in the record.  *Id.* at 29–30.  An

ALJ's determination as to the persuasiveness of a medical opinion "generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies.'" *Dunn* v. *Colvin*, 607 Fed. Appx. 264, 267 (4th Cir. 2015) (internal citation omitted). No such inconsistencies exist here. Notably, the ALJ cited an "85% improvement in functional use of [Plaintiff's] right hand" since beginning occupational therapy in 2021, his failure to return to occupational therapy as of late 2022, and his "rather conservative pain management" to further support her residual functional capacity finding. ECF No. 8-3 at 30. In sum, the ALJ's decision is supported by substantial evidence and "will not be disturbed." *Dunn*, 607 Fed. Appx. at 267.

## III.     CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed. A separate Order follows.

Date:  May 7, 2026                                      _____/s/_____
                                                        Erin Aslan
                                                        United States Magistrate Judge